We will hear argument first this morning in Case 24-5438, Bowe v. United States. Mr. Adler. Mr. Chief Justice, and may it please the Court. By its plain terms, 2244b-1 applies to habeas corpus applications under Section 2254. It, therefore, does not apply to motions to vacate under Section 2255. After all, those motions have their own separate gatekeeping requirements. Resisting this straightforward conclusion, the Court-appointed amicus proposes an elaborate theory that no court in the country has adopted, but the plain text, context, and structure of the statute make clear that B-1 does not apply to federal prisoners. This Court has jurisdiction to so hold. We have offered several arguments for why 2244b-3e does not bar review here, but the simplest one is this. The subject of our cert petition is not the denial of an authorization. This argument is based on Castro and the passage on page 380 that starts with the sentence, even if for argument's sake. The Court assumed that there was a denial of an authorization because the Court of Appeals had stated that the prisoner could not satisfy the gatekeeping requirements. But this Court unanimously held that this denial was not the subject of the cert petition because the prisoner sought review only on the antecedent question of whether he had to satisfy the gatekeeping requirements at all. There is no material distinction between that question reviewed in Castro and the question here, which is whether petitioner must satisfy the gatekeeping requirements in B-1 at all. Because there is jurisdiction, the Court should seize this opportunity to resolve the 6-3 split that has evaded the Court's review for the past several years and that will otherwise go unresolved. I welcome the Court's questions. Why would Congress want to treat federal and state prisoners differently? Justice Thomas, the short answer is federalism. We know throughout AEDPA that Congress did in fact treat state and federal prisoners differently. We cited numerous examples in the statutory text that reflects that differential treatment. And we even see that with respect to second or successive applications as well with respect to the newly discovered evidence criteria, which we know are different. The fact is that state prisoners, when they are in federal court and challenging a state judgment, the tension is high with the sovereignty of the state court. So that is why we see it with exhaustion. We see it with the deferential standard in 2254D. We see it with the limitations on evidentiary hearings. And B-1 is just another example of that differential treatment. So what was the point, what was Congress trying to accomplish with 2255, with the addition of H in 2255? In H, Congress was enumerating the two conditions that federal prisoners must, one of two conditions that they must satisfy before they can bring a second or successive 2255 motions. The only other thing it did in H was incorporate the certification provisions in 2244B-3 that govern how that determination is going to be made. As between federal and state, beyond the federalism issue, why would those be treated differently, the prisoners, the federal prisoners and the state prisoners? They had been treated differently, but I think the effort by Congress was to bring them closer together in treatment. Your Honor, we don't agree with that. We see numerous examples in AEDPA where they are treated differently, so we know that they're not treated the same. And beyond federalism, we know finality concerns are different. State prisoners have had multiple rounds of review by the time they get to a successive 2254 petition. And the number of state prisoners far outnumber federal prison in our system. And so Congress would have been concerned about finality, most of all with state prisoners, including the fact that the vast majority of capital inmates here in this country are state prisoners. Going back to that point, when you say multiple rounds, a state prisoner has had a state court, intermediate state court, final Supreme Court, a district court, and a court of appeals. But in federal court, a prisoner only has two rounds or three rounds of review, correct? That's correct. What state prisoners have that federal prisoners do not is they also have state post-conviction review, which serves as an additional level of review that federal prisoners do not have. They also have, of course, the right to appeal any federal claim to this court. Even on direct appeal of their state conviction. And we actually see a collateral estoppel bar in 2244C that applies only to state prisoners. Counsel, I don't want you to give up your first argument on jurisdiction. I know that in a previous statement I made in this very case, I suggested that it was wrong. But your brief gave me great pause. Don't give up on it. All right. Your position is that the cross-reference barring jurisdiction does not unambiguously incorporate the cert bar that exists for state prisoners, correct? That's correct. And our case law is replete that to deprive us of jurisdiction, it has to be clear. That's correct. All right, and unambiguous. Correct. And this is not. All it says is that successive habeas motions filed by federal prisoners, quote, must be certified as provided in section 2244 by a panel of the appropriate court of appeals, right? Correct. Now, that's not sufficiently clear because this court is not a panel of the court of appeals, right? That is correct. And so it's speaking about whether a full panel could hear it, not whether the Supreme Court could hear it, correct? That's correct. To be clear, we are not giving up that argument. All right. We are simply saying, as we did on page 15 of the reply brief, that it's not necessary. Because of the cast show argument. And our other narrower arguments. But any review by this court of the panel's cert decision is not part of how the panel certifies a successive filing, correct? That's correct. Our argument is based on the text of 2255H, which incorporates the parts of 2244 that, quote, provide for how a motion is to be, quote, certified by a, quote, panel of the appropriate court of appeals. And our position is that incorporates B3A through D because those provisions do just that. But it does not incorporate E, which comes into play only after the certification determination has been made. And it provides limitations on further review in the form of rehearing and certiorari. Go ahead. One last question. The two standards of review, H and what the state court looks for, you mentioned earlier, are very different things, correct? The substantive standards. With respect to the newly discovered evidence, they are different. With respect to new rules of constitutional law, they are identical. But there's still a difference. With the newly discovered evidence, yes. And six circuits are applying the state prisoner substantive review provisions rather than the federal substantive review provisions. Our position is that they are applying B1, which on its face applies only to state prisoners. That's correct. All right. Thank you. Does your reading of 2255H make a hash of the procedure that Congress has prescribed? An authorization to file a second or successive application must be certified by a panel of a court of appeals. And that court has to do that not later than 30 days after the filing of a motion. But on your reading, even though the panel has to move very quickly, once the panel has ruled, if it denies the application, then the prisoner can move for rehearing on bank and there are no special time limits on that or rehearing before the panel. There are no special time limits on that. They can file a petition for a writ of certiorari. There are no special time limits on that. So doesn't your reading completely vitiate what Congress was getting at? Sure. We understand that concern, Your Honor. Our position, this only goes to our broadest jurisdictional argument that Justice Sotomayor referenced. But to answer your concern, we don't think that Congress has to legislate in an all-or-nothing manner here. So with the 30-day limitation on the front end, that significantly increases the expediency of the process here. Normally an appeal would take a year. Now it takes 30 days. But that doesn't mean that Congress also wanted to eliminate all forms of further review. And we see Congress doing this in 2266, another provision of ADPA, which places time limits on the resolution of capital cases, but does not dispense with further review and rehearing of certiorari. Of course, our position is that the Court does not need to address this argument because we have three other narrower arguments. And this, of course, was the same approach that this Court took in Castro. Every Court of Appeals has decided the issue. You've just been deciding against it, right? In the context of rehearing, of course, no Court of Appeals has done so in the context of certiorari. But, yes, I believe that is correct. However, none of the... If that's correct, right? So just to step back, you agree that B-3, A, B, C, and D are all incorporated in 2255. Correct. So we're left with E. And as Justice Alito pointed out, every single Court that's addressed the issue says that that does bar panel rehearings and en banc rehearings. But you would ask us to overturn all those decisions, or do you think there's a way to say those decisions are correct, but it's only the bar... It's pretty express, no certiorari, right there in E. Is it somehow different? From the rehearing bar? No, that's not our position. We just think that the six... They're all wrong. All the courts are wrong. Correct. They have not actually taken the text of 2255H seriously. Okay. I appreciate that argument. I understand that argument. Is there something odd about the fact that you would bar cert petitions and rehearing petitions for not just state prisoners under 2254, but also any 2244 pre-conviction prisoners, but yet not federal prisoners? Do you see what I'm saying? I mean, 2244 isn't just post-conviction relief. It's pre-conviction relief, too, often. That was its central and original function, and yet they couldn't bring cert petitions. They couldn't bring rehearing petitions. State prisoners can't bring rehearing petitions post-conviction, but federal prisoners can? Do you see the incongruity there that I'm observing? I think it's a difficult question whether 2244B applies to 2241 habeas petitions, which I think is what your question is getting at. I certainly don't think the court has to decide any of that here. But that is where your logic leads, and so I just wonder how that could be. What would be the rational account for it, if that's how it works? Our position is simply that the text here treats federal prisoners differently in B3E in the same way it does in B1, and that is, of course, due to federalism. That is a plausible explanation. Again, however, I don't think the court needs to go broad here when we have narrow words. But can you think of it, and maybe the answer is you can on your feet, and I get it, any reason why pre-conviction prisoners would be barred, but post-conviction prisoners wouldn't be? Well, Congress has drawn a distinction throughout the statute between people who are in custody pursuant to a judgment and people who are not. As for pretrial detainees, my experience is that they are not having to file second or successive motions to file their 2241 petitions. To the extent that's a category of cases, I'm just not aware of it, so I think in practice it just hasn't been an issue. But, again, I just don't think that the court has to decide any of this in that case. All right, so you keep going back to your narrow jurisdictional argument, and I'm quite interested in it, and I guess I'm trying to understand whether your response to Justice Gorsuch's bringing up all of the prior court of appeals cases is that perhaps they weren't focused on whether or not the panel had actually granted or denied, had actually applied the substantive criteria, and that what E is really doing, this is what I take your argument to be, is essentially establishing a finality requirement when the panel actually does apply the substantive criteria and makes a determination about whether this authorization should be granted or denied. But when, as here, the panel doesn't do that because it makes some other determination about, let's say, its lack of jurisdiction to make that kind of a ruling, that's still on the table as you read E. That's not being stripped by this statute. Is that right? In general, yes. We have three different narrow arguments here, and they're all slightly different, if I can just briefly sketch those out. The first one, logically, is that the court of appeals here did not deny the motion for authorization, the keyword being denial, because the court of appeals dismissed it for lack of jurisdiction. It did not issue a ruling on the merits, and that argument follows from this court's decision in Stewart. The second argument... Wait, that's sort of what I'm saying, right? It didn't make the requisite determination that triggers E. You have to grant or deny, not dismiss. That is correct. That's our first argument. Our second argument is, even if there's a denial, the court of appeals did not issue a denial of an authorization, because it went beyond the gatekeeping requirements. Now, this argument depends on whether we're right about B.1., but if we are, it means that the court of appeals did not issue a proper authorization determination, because it relied on a requirement that is, in fact, not a requirement for authorization at all. In fact, it's irrelevant to the case. And our third argument is based on Castro and someone I opened with, which is that even if there is a denial of an authorization, it's not the subject of our cert petition. The subject of our cert petition is an antecedent question about whether we have to even satisfy the gatekeeping requirement in B.1. at all. That is the line that Castro drew. And on the other side of the spectrum, if we had, say, challenged the court of appeals, saying you cannot actually satisfy these gatekeeping requirements, that's a denial, that's barred. That is the sort of core focus of B.3. So under this narrow jurisdictional approach, there's still work for E to do. It's not as though your broadest argument is E doesn't even apply in federal cases. Correct. That's the one that Justice Sotomayor explored.  But now you're saying even if E applies, it doesn't apply in our circumstance for these three cases. Correct. And this situation is so far removed from the core of B.3.E. B.3.E. is about preventing this court from reviewing individualized applications and determinations, people seeking error correction in this court. This case is far removed from that because, first of all, we have a non-merits-based dismissal based on a gatekeeping requirement that we contend does not even apply in this case. Thank you. But you applied for authorization, right, to file a secondary succession. That's correct. And is that still on the docket of the Court of Appeals? No, it is not. So it was denied, right? No, Your Honor, there's a distinction between a dismissal and a denial. Well, it was effectively denied. What you're saying is it was denied on an improper ground. Correct. The effect of it was a denial. However, we know from Stewart, this court's decision in Stewart, that the effect does not matter because the effect of the ruling by the Court of Appeals in Stewart was to grant authorization. In fact, the Court of Appeals transferred it to the district court. This court said it's not a grant of authorization. And the reason why is it didn't rule on the merits. Now, here, the effect is to deny, but the effect doesn't matter. What matters is the Court of Appeals did not rule on the merits. That's our first dismissal denial argument based on Stewart. Okay, thank you. On your broader argument, picking up on Justice Gorsuch's question, the distinction between in-bank or petition-free hearing in the Court of Appeals and then this court's review might depend on the clear statement rule in part. How should we think about the clear statement rule and how to apply it here? Your Honor, that is a correct distinction that the clear statement rule that this court applied in Castro 2B3E would only apply to the certiorari bar rather than the rehearing bar. So if the court wanted to sort of decouple those, that would be the basis to do it. That's not our position. We just think that E is not covered by the text of the cross-reference in B3E because it comes into play after the certification determination has been made. And as the government acknowledges, B3E, it's just a limitation on further review. And so that's why we think the whole thing falls outside the scope of E. But you're correct that to the extent the clear statement rule would make a difference here, yes, the certiorari bar is even further removed. What would a clear statement, what more would Congress have to do, do you think? Well, we have a clear statement in E itself with respect to state prisoners, with respect to habeas applications. What we don't have is a clear statement in H where we're talking about federal prisoners. And we pointed this out in our initial brief with the Hone decision. And that case drew a contrast between B3E as a clear statement and a certificate of appealability provision in 2253, which didn't have that. And we think that same sort of contrast exists here with B3E and 2255H, which says nothing about jurisdiction. 2255H does say, and this is just as I'm trying to think about this argument, this clear statement point that you have I think is your best one on your broader argument. 2255H does say, though, that a second or successive motion must be certified as provided in Section 2244 by a panel of the appropriate court of appeals. So what are we to make of that? It says certification has to come from a panel, and then one could flip back to 2244 and say that this whole section in 3 is talking about how that certification happens by a panel, and then E says, and yeah, it really happens by a panel. The panel's word is final. Your Honor, I understand that point. That's not what E says, however. All E does is prohibit a petition for rehearing, so that's why every circuit to look at this has said that sua sponte rehearing is still on the table. All we're saying is that B3A through D say that the certification determination has to be made by a three-judge panel, but it doesn't prohibit rehearing petitions by federal prisoners. So it's a difficult argument and a difficult issue, again, that I don't think the court would have to address if it went with one of our narrower arguments. I mean, what E tells you is when this certification process generally stops. I suppose that's the same point that Justice Barrett is making, and it seems to be slicing the bologna pretty thin to say, well, we'll do A through D, but then we won't do E, even though E basically puts the period on what A through D says. It says, here's when it ends, the certification process. Sure, Your Honor, we take that point. I think the key word that you just used is process, which is not a word that's used in H. That's a word that's added by the government in its brief, along with the words final and conclusive. I take the point, but what H is about is how something gets certified. So it doesn't seem to be too much of a leap to say when you're talking about how something gets certified, you're talking about the certification process, and that includes sort of the statement which E gives about when and how that certification process ends. Sure, Your Honor. So, again, our argument is based on the full text of H, certified as provided by a panel of appropriate court appeals. We think that only covers the provisions that provide for certification. E comes after that determination of the name. Could you win without the clear statement rule? I'm sorry? Could you win this argument without the clear statement rule? I think so, Your Honor. But, again, I think we're perhaps losing sight of the bigger picture here, which is that the top priority in this case, we think, is for this court to be able to resolve the circuit conflict on B-1. So we don't have a particular dog in the fight on how the court resolves its own jurisdiction here. And that's why I keep coming back to our narrower arguments because to the extent that anyone is concerned about the implications for this, the narrow arguments would avoid that. Thank you, Counsel. In your brief, you argue that interpreting B-3E as taking jurisdiction away would raise serious questions under the exceptions clause. Do you want to answer that serious question? I certainly don't want to answer that question, Your Honor, but I think this court might have to. If it concludes, if it rejects all of our jurisdictional arguments such that there's really no way for this court to exercise its essential function under Article III, which is to ensure the uniformity of federal law, including a very important federal statutory provision in AEDPA. Well, it says that, not with respect to AEDPA, but subject to such exceptions and regulations as Congress may make. Why isn't this just an exception that Congress has made? Sure, so if you reject all of our jurisdictional arguments and given the potential unavailability of original habeas petitions by federal prisoners after Jones v. Hendricks, there is really no viable way for this court to be able to ensure the uniformity of federal law here. Now, the amicus brief by the federal court's professors lays this out very well and summarizes the scholarship, but this case is a unique one in the sense that original habeas has always functioned as a safety valve here. That's what the court has always pointed to, and if that's not available, and if certiorari is not available under any of our arguments, then that is why I think we come into serious problems here with the exceptions clause. And I think the court can simply avoid all of that if it narrowly construes B-3E as it has always done in the only two cases where it's interpreted that provision in Stewart and Castro and exercises jurisdiction on one of our narrower arguments and therefore directly resolved the conflict over B-1. But we've never held that the exceptions clause does not mean what it says, have we? I'm not aware of any decision by this court resolving that question, no, and I don't think that this is the case to do it because of the avoidance, the avenues we've given this court to exercise jurisdiction on some other narrower ground. Thank you, counsel. Justice Thomas? Justice Alito? On the relitigation bar, what's your response to the argument that Congress may not have been particularly attentive to terminology but that the thrust of what it was trying to do was to apply the same rules to federal and state prisoners? I think there's simply no evidence to support that in the text. We have 2254 appearing in B-1 and B-2, but not in B-3, by the way, whichever one agrees the certifications there do apply. So that distinction is important. Everybody agrees. The 11th Circuit, court appointed amicus, agreed that B-2 doesn't apply to federal prisoners and it uses the exact same 2254 language. And then we have two separate and independent gatekeeping requirements for federal prisoners in H-1 and H-2, state prisoners in B-1 and B-2. So it's a symmetrical regime that they set up here. So I think every textual indication here is to the contrary. All right, thank you. Counsel, if Congress wanted to include the cert bar, it could have just said, as provided in Section 2244B-3, correct? Correct. But it didn't. It used a different phraseology. Correct. And the process that was used that it references is a process of court certification, not of cert, correct? Correct. And that's your basic point? That is supportive of our basic point. Our basic point is really a textual argument here. It's not a policy argument. I think that's what the government is trying to say here is we don't want to see a lot of cert petitions here because we're overworked. I think that's the main concern. But we're making a textual argument about the scope of the reference and cross-reference in H. I'll take a moment to the Chief Justice's question, OK? With respect to review by the Court of Appeals or why isn't there a constitutional question with AEDPA but there would be one if we deprive federal prisoners of review of this issue? I think this particular circuit conflict on B-1 is unique in the sense that it can be raised only by federal prisoners. And if federal prisoners can no longer file original habeas petitions in this court, challenging a conviction and sentence after that, then this particular split, I think, highlights the potential constitutional problem in a way that no other split would. Now, other splits could still raise the question because this court is rarely, if ever, actually used its original habeas power. But this particular split, I think, is the problem here because there's really no other viable way for this court to resolve this circuit conflict on B-1. And the circuit conflict is on whether the successive petition bars review at all? No, the circuit conflict is on whether B-1 applies to 2255 motion. That's what I meant. Correct. OK, thank you. Justice Kagan? Your Honor, the clear statement rule that you invoke from Castro, I take it comes from the sentence where it speaks of the basic principle that we read limitations on our jurisdiction to review narrowly. No, Your Honor, there's a sentence, I believe, right before or right after that, it says that we are not going to read B-3E in a manner that would close this court's courthouse doors to a class of habeas petitioners without a clear indication that Congress sought to do so. Clear indication. Correct. OK, thank you. Justice Gorsuch, we haven't given you much of a chance on the merits to speak, and I do have one question for you about that that I'm struggling with. So you agree that B-3 and B-4 apply when we get to the merits, right? If you reject our broader jurisdictional argument, then we would agree with that. OK. But not if you agree with that. I understand that. OK. So we've got B-3 and we've got B-4 in there, but not B-1 and B-2. Correct. And one of the main arguments, as I understand it, has been because B-1 and B-2 speak about applications under Section 2254, right? Yes. OK. I wonder why that doesn't cut the other way, because throughout 2244, B-1, 2, 3, 4, it speaks of applications, not motions, which you have in the 2255 context. So you've got to read motions as applications. OK. And 2254 is the state post-conviction procedure that's most analogous to 2255, right? I would agree with that, yes. OK. And that's what's referenced in B-1 and B-2, is the state post-conviction procedure. And B-3 and B-4 just talk about applications, which includes pre-conviction, again, 2241, possibly.  So what do we do with that? It seems to me like the fact that it mentions 2254 in B-1 and B-2 makes it more likely to be applicable rather than less. No, Your Honor. We strongly disagree. I know you do, and I'm wondering why. Here's why. Because the fact that 2254 is referenced in B-1 and B-2 but not B-3 and B-4 suggests that, number one, the 2254 language in B-1 and B-2 was deliberate, and number two, it suggests that the omission of that language in B-3 and B-4 allows those provisions to apply to 2255 motions in a way that B-1 and B-2 cannot. But why wouldn't... I understand that. That's what you said in your briefs, but I'm not sure it's totally responsive to what I'm getting at, which is it definitely signals that we're talking about post-conviction when you mention 2254. And the later sections suggest it applies to all habeas, whether it's 2241 or 2255, right? No. So B-3 and B-4, which don't have the 2254 language. Yeah. We acknowledge what you said earlier. I think everyone agrees. The word application, which refers to a habeas corpus application, has to mean motion in order for the cross-reference in H to work. Right, I understand that. So then the question is, once you adjust application to motion, then what do you do there? All we're doing is we're reading the rest of that B-3 in that context. What Amicus wants you to do is, instead of adjusting requirements of this subsection, she wants you to keep that the same as it applies to applications and then go up to B-1 and B-2 and rewrite 2254 to mean 2255 in a way that would immediately create both conflict and superfluity with H-1 and H-2. Thank you. Counselor, I want to sketch something out for you and see if you think it might work. Okay, so the government points out on pages 12 and 13 of its reply that if we agree with you about your B-1 point, agree with you and the government about the B-1 point, that it would be pretty natural, even if we disagree with you and agree with the government on the jurisdictional point, pretty natural to express agreement with the B-1 point in the course of an analysis on the other. Okay, now let's say that I, and this is true, I do think there's something to this argument that the Courts of Appeals has made that E does not deprive them of jurisdiction to respond, say, to have a panel re-hearing or re-hearing en banc because it's really talking about the prisoner's inability to file such a petition or a petition for writ of certiorari. Okay, so this is what I'm sketching out here. Wouldn't it be possible if this Court said in the course of the analysis as the government proposes that B-1 is not incorporated, wouldn't it be possible for the Eleventh Circuit on remand to sua sponte correct its error? Wouldn't it be quite surprising, in fact, if the Eleventh Circuit didn't do that sua sponte if it has the authority under E, either by the panel or en banc, if we say that it is wrong in B-1? The problem with that, Your Honor, is that there will be no remand if the Court dismisses this case for lack of jurisdiction. So we don't think the Court should consider the government's proposal on page 12 unless the Court totally rejects all of our jurisdictional arguments. That was the premise of my question. Okay, I'm sorry. So, yes, then there would be no remand for the Eleventh Circuit to do that sua sponte re-hearing that you suggest. And this is our concern here with this suggestion is that it's even beyond that, which is that if the Court tries to resolve the B-1 conflict in the course of dismissing this case for lack of jurisdiction, we are concerned that the courts of appeals may perceive that to be dicta or worse in advisory opinion. So if the Court does consider that option, we would urge the Court to be as explicit as possible on the B-1 question, even to the point of saying that the reasoning on the B-1 issue is a holding. Otherwise, what's going to happen is that if even one of the Sixth Circuits says, you know what, this is dicta, it doesn't abrogate our prior panel rules, and the Eleventh Circuit in particular has a very strict one, then we're in a situation where there's no way to get back up to this Court on cert, and the circuit conflict will never be resolved. And then we'll have wasted all of our time, and this will all be for nothing. So I think the better way to deal with this, rather than that sort of very unorthodox approach, is to narrowly construe B-3E as it has always done, as this Court has always done, and directly resolve the circuit conflict over B-1. Well, I don't know that that would be unorthodox, because we say things, we have alternate holdings, and we say things in opinions all the time that aren't directly relevant. But I take your point. Just one other question. The Chief Justice asked you about the constitutional avoidance on the essential functions piece, and you say that, yes, it would raise a constitutional question, because construing this jurisdictional bar to be total would threaten the Court's essential function of maintaining the uniformity of federal law. Why wouldn't that completely eviscerate the exceptions clause? Because it's possible to have a split on any question of federal law, right? So why could Congress ever withdraw our jurisdiction to weigh in on any question? Because even if a split doesn't exist then, it could always exist, right? We're not saying that it wouldn't. A problem wouldn't arise in that situation. I think it's important to point out that this statute, B-3E, is unique. There is no other statute like this. There are plenty of statutes that bar judicial review across the board, but there is no statute like this that targets this Court's certiorari jurisdiction. And the problem that arises is the lower courts, the federal courts of appeals, are interpreting and applying AEDPA. And if this Court cannot superintend that and step in when there's a conflict... So Congress can't... I mean, I take them... The straightforward answer to my question is that, yes, Congress can really never deprive this Court of certiorari to resolve questions of federal law, because that would deprive us of our ability to ensure the uniformity of federal law. I think there's at least a serious question about that, and that's because whenever lower courts are deciding issues of federal law and this Court cannot step in, then this Court ceases to be the Supreme Court. The courts of appeals then become their own mini-Supreme Court. Thank you. Justice Jackson? Thank you, Counsel. Mr. Yang? Mr. Chief Justice, and may it please the Court, Section 2255H incorporates the certification process for secondary successive applications in 2244B3 and B4. And because B3E prohibits review by petition for writ of certiorari, this Court lacks jurisdiction. 2255H specifies three key aspects for certifying a successive application. Who must certify it, what is certified, and how that process proceeds and stops. First, certification must be by a panel of the appropriate court of appeals. Second, the application must be certified to contain either of H1 or H2's content requirements for new evidence or new rule of constitutional law. And third, the application must be certified as provided in Section 2244, which means the certification process proceeds in the same manner as in 2244. B3 and B4 are the only provisions in Section 2244 that address the certification process for authorizing the filing of a successive application. Every provision in B3 and B4, and only those provisions in Section 2244, use authorization language and use the term second or successive application, a term that naturally captures a federal prisoner's 2255 application and a state prisoner's 2254 application. Petitioner agrees that B3A through D apply to federal prisoners. He previously argued in his habeas petition to this Court that E also applies, and there's no sound basis for excluding E, as every court of appeals to address the E has concluded. Petitioner did not even attempt in his reply brief to rebut any of our arguments on this broader point. He instead notes that E prohibits cert only when authorization is granted or denied. And he primarily focuses on that point, saying his request was not denied, it was merely dismissed. But a dismissal is quite literally a denial of his request. That denial is the subject of a certiorari petition. This Court, therefore, lacks jurisdiction. I welcome the Court's questions. Mr. Yang, would you turn to the clear statement rule and how it applies here? Yes. We think the language is clear, both the text as well as an important contextual point, and I'd like to build on what Justice Alito said there. And then I'd also like to address the clear statement rule, which I don't think is as clear as Castro, the one passage that Castro might suggest. First, the contextual point, and we can talk about text, but one significant contextual point is not only would allowing a 90- to 150-day period simply to petition this Court for writ of certiorari, not only would that blow the 30-day limit apart, but you have to ask, why would Congress impose a 30-day limit on the most important part of this process? That's the Court of Appeals' screening decision itself. Why would that be limited to 30 days if Congress contemplated that a petitioner could take 90 to 150 days just to consider whether to file a petition for writ of certiorari? No, again, that might be a good argument, but it's not the kind of argument that you can make if there's a clear statement rule. And I think, though, actually context is considered, if you're looking at statutory construction for clear statement, you include both the text and the context. And we think that... You might put it in as, like, and also. You need something in the text that is a clear indication, that is a clear statement, that basically says what you want to say. And we think H does that. H incorporates that shall be certified as provided in 2244. And part of that process is to decide who is certifying it and how is it being certified. It's being certified on a request for leave to file, filed by a petitioner, a prisoner. It's not on a petition for rehearing or on a petition for cert. The process ends. It does not continue. When I tried a version of that argument to Mr. Adler, Mr. Adler told me that I was adding the word process, which no place appears in the statute. And, of course, he's right about that. Process doesn't appear, but it says certified as provided in section 2254. As provided by the court of appeals. So that would suggest that even though it looks a little bit weird to go from A to D and skip E, what 2255H describes is the stuff that's described in A through D but not in E. And that's just part of the analysis. You also have to look at the language in E. E uses second or successive application, and it talks about the authorization. Second or successive application, if Congress had intended to include, to cut out state prisoners, it would have done exactly what it did in B-1 and B-2. It would have said second or successive habeas corpus application under section 2254. Instead, B-3 and B-4, which are all procedural provisions regarding the process, which we think is incorporated, all use distinct language. And no one has come up with any explanation that will respond to the Rosello presumption. It's a strong presumption. All of these provisions were enacted at the same time. Could you comment on Mr. Adler's points to this language from Castro, which is about this very provision, of course. And it says that, you know, read one way, it would close our doors to a class of habeas petitioners seeking review without any clear indication that such was Congress's intent, indicating that a clear indication is what's needed, given the basic principle that we read limitations on our jurisdiction to narrow it. I think that should be read somewhat narrower. It has to be read in light of what immediately preceded it in that paragraph. In that paragraph, the Court says, first, we've already construed E to allow the government. When the lower court disfavors the government, the government can seek review on the question of whether it was a second or successive. And then it goes on to say, and we're not going to deny the flip side rule when a prisoner comes up. But that is all in the context of asking the core question of was this a second or successive application. Was it in the box that the jurisdictional bar comes from? Do you think that's a clear statement rule or not? I think no. At least not as broadly defined. What does that mean? Well, if you look at what Castro cites, it cites for the clear statement Utah v. Evans. You think there should be a clear statement rule to add that in, too? No. First of all, this Court has narrowly construed grants of appellate jurisdiction to it. Mandatory appellate jurisdiction under 1253 and what was formerly 1254-2. And if you look at Abbott v. Perez or Maine v. Taylor, the Court narrowly construes those grants of jurisdiction. And it does not sit comfortably to narrowly construe exceptions to jurisdiction in light of those precedents. Why? Meaning Congress has given us a very broad jurisdictional grant over decisions by court of appeals through our cert jurisdiction. And when Congress wants to take it back, it's when we require clarity. But that reasoning would equally apply to 1253, which is the three-judge district court appeal, or what used to be 1254-2, which is state appeals with regards to the unconstitutionality of state provisions. Both of those are phrased broadly, but the Court has narrowly construed them in a long line of decisions. Now, the question about what was going on in Castro, I think, has to be read in light of that. Are you going back to Justice Kavanaugh's question? Yeah, I'm trying to pivot back to what Utah v. Evans. The reason for a clear statement rule or clear indication is that the underlying constitutional question is one that we haven't had to squarely answer for 236 years. Yeah, and the exceptions clause, if you were going to address the exceptions clause and the scope of Congress's power there, it would not be in the context of a habeas appeal. Because at the founding, it's well-established that there was no right to appeal at all the denial of habeas. It was not in this Court's or any Court's appellate jurisdiction, and so the idea that there would be an exceptions clause problem is just completely ahistorical. So we get out of that, in your view, because this is just different because it's habeas? It's habeas, and there's just no founding-era principle that would have applied here. Moreover, there are some bases for review. Yeah, what are those? So, first of all, I think as Justice Barrett indicated, if the Court took the interpretive approach that we did here, I think its decision on jurisdiction would effectively announce the proper interpretation. Would the lower courts have to follow that? I think not. You know, I would think it would be a pretty willful lower court. Well, what would we do if they didn't? Well, if you didn't, there is the question of sua sponte en banc, which we can discuss. But if you wanted to address it specifically, I think there's a question of certified question to this Court. And if it's not certified? Well, first of all, I think the Court of Appeals misunderstood the certification standard. The certification standard here is whether it's appropriate in a rare instance when advisable in the proper administration and execution. The only point I was making is that it seems pretty cute to kind of have a collateral dicta and expect everyone to follow that when we're openly saying, under your view, no jurisdiction. It depends on how the Court writes the opinion. I think it's not — the Court will not go out of its way to escape the, you know, rule on the merits when addressing jurisdiction. But if you agree with us, the natural way to do that is to analyze the statute in a way that will carve out the way. Mr. Adams, at the very least. Oh, I was just going to ask, what about relief for Mr. Bowe on remands? Well, Mr. Bowe might not — there wouldn't be a remand. But Mr. Bowe has already filed multiple applications in the Eleventh Circuit on his — But your solution — He could just file another one. On this application. But he could simply file another successive application. And why wouldn't it suffer the same fate? They've already said they're not certifying to it. They've already said they're not. No, no, no. Because the Court of Appeals would say the reason we bumped it before is we thought B1 applied. The Supreme Court has construed 22-24. So a third or fourth successive petition for him would be a second or third. Well, he's not even filed a second application yet. So, Mr. Yang, can I just — let's say I agree with you that E is a part of the certification process that is being referenced in H. Can I have you address the more narrow jurisdictional argument, which does focus on the text of E? Your argument seems to suggest that we should not pay attention to the difference between granting and denying something, or denying an authorization, and dismissing the entire matter for lack of jurisdiction. And I guess I don't understand that. We have very clear procedural requirements and understandings when a court is doing certain things. And here, the Court of Appeals panel did not grant or deny an authorization. We disagree with that. Okay. But the statute says, and this is D, the court shall grant or deny authorization. Shall. Right. Those are the only two statutory options. What if the court doesn't do that? Let me give you a hypothetical. All right? Suppose we have a three-judge panel that doesn't do what Congress has said you're supposed to do. What does it do? No. Let me finish. All right? So in my hypothetical, the three-judge panel doesn't apply any of the relevant statutory criteria when it reviews an authorization request. So you agree here that the H.1 and H.2 substantive requirements apply. And in my hypothetical, the panel says, we don't care about that. We're just going to rubber stamp all of these applications as denied. All right? So we have a rogue panel not following what the statute says. Now, they've technically denied in that sense, but they certainly haven't followed what the statute says. They haven't granted or denied on the merits. And I guess I'm trying to understand why E would preclude someone from appealing that. It seems to me that E was really just about Congress not wanting the actual substantive determination that a panel properly makes to be appealed. What it was not doing was policing all of the or precluding an appeal about whether or not the panel had acted procedurally properly under the statute. Well, there's two responses. One is a textual response, and then I think you're actually getting into a policy response. No, I'm not, actually. Well, the textual response is this. It says grant or deny. Literally, a dismissal is a denial of the application, as this court has recognized in Gonzales. It's denied on the ground that the claim would be dismissed. Now, whether a court is wrong in a denial or wrong in a grant, it can happen both ways. No, no, no. A grant or denial is not subject to review by this court. I guess I understand your point. It just seems to me to elide a very key and critical thing that Congress was trying to do here, which is Congress gave this panel particular requirements that it has to apply when making this decision. One could conceive of the finality requirement as being once the panel has gone through and applied H1 and applied H2 and determined that authorization should be denied, that's the end of it. That's final. That's the work of E. To me, and I think textually, you know, it supports the view that if a panel has not done that, if a panel has not actually made a determination about whether or not this should be granted or denied and say they have dismissed it for some other reason, it doesn't trigger what E is trying to do. There isn't a finality requirement in the same way. Why would Congress have even put in the substantive criteria if the panel could do whatever it wanted? There still has to be judicial review as to whether or not the panel has acted properly procedurally. That premise does not lead to the conclusion. Of course, Congress wanted the panel to follow the law, but the question is whether Congress determined that there should be certiorari review of claims that the panel erred. Erred with respect to what? But the statute does not say grant or deny on the merits. It says grant or deny, period. All right, thank you. And a dismissal is a denial. Moreover, the structure, the structure with the 30-day time limit, that time limit cannot depend on the disposition of a court, which is unknown in advance. If the court doesn't know if it's going to dismiss or deny, it can't operate under a 30-day time limit unless it knows what the time limit is in advance. That theory of dismissal being distinguishable from denial would apply not only to E, it would apply to D, which is where the 30-day time limit is. It makes absolutely no sense. It's arbitrary, and it would also be asymmetric. It would allow where denials on a non-merits ground, that could go up on cert, but if granted, like if the court rejects a non-merits ground and allows it to go forward, that couldn't be. Again, that doesn't make great sense, and it's not compelled by the text. I think we were talking about certified questions briefly. I just want to address this because I think this is important. The Court of Appeals said that certified questions are very rare, and that's right, normally, but that's because certiorari jurisdiction is available. The standard is when it's advisable in the proper administration and expedition of judicial business. When there's cert, which can be granted before or after judgment, extraordinarily rare, but if cert's not available, and there's a square and significant conflict that's recurring, it's entirely appropriate for a Court of Appeals panel, and you only need two judges on a panel to certify the question to this court, and then this court can decide what to do. Moreover, there's merits review. As you may remember, Justice Kavanaugh, you wrote separately in a case called Avery. Avery came out of the Sixth Circuit raising this exact B-1 issue, but it came in a different posture. It came where a panel certified a second or successive and went down to district court, was litigated, and came back. The issue can come back on the merits in that way, too. And, of course, there's all writs act jurisdiction. All writs act is not precluded. Now, it would only address clearest errors, but it still exists. But the standard there would be indisputably clear. It's a very high standard, but it would take care of the clearest errors. Now, there's a question, and so even if, which I don't think it's clear, but even if there weren't original habeas in this court, which is what I think the hook that petitioner relies on, there's other avenues for this court to address these issues. Jane, when you and Justice Kavanaugh were talking about the clear statement rule, your answer to him seemed to reduce to habeas is different. But, of course, Castro is a habeas case, and Castro dealt with the very habeas provision that we're talking about here. And I guess you referred me to earlier sentences from Castro, and I've read those sentences again now. And I really don't see how it gets around what Castro says, which is that you need a clear indication to when the interpretation would limit our jurisdiction. I think it has to – this is a two-step process. First, the court recognized we already allowed this for the government. Now we're talking about the flip side. Same question, though, about whether it's second is excessive, whether that's barred. Then you look at Utah, Utah v. Evans, which is ultimately the site for the narrow reading provision. Yeah, but Utah, I mean, that's the kind of site that people throw in because it has good language. So I don't think you can read Utah v. Evans back into this. Well, there's two things actually going on in Utah v. Evans. First, which I don't think applies, but it says that with respect to this narrow reading, it rejects the argument that because Congress allowed a pre-census challenge, it precludes a post-census challenge. But that's about any review. It's not this court's review. This is not an opinion is what I'm trying to say where it says, you know, really we should look to Utah v. Evans for the rule and describes why or describes how this case is the same as Utah v. Evans. It's just plucking some language from Utah v. Evans. But the purport of this paragraph is quite clear. It's that because there's a construction that limits our jurisdiction, you need a clear indication. But the part of Utah v. Evans, which is actually analogous to what's going on here, is there the court said that it was not going to read into a statute an unexpressed intent to bar jurisdiction that we have previously exercised. And there the court had previously exercised post-census review. And here what the court is saying is we previously exercised jurisdiction when the government comes up saying this is second or successive when it was deemed not to be. And here is the flip side. Here is the prisoner. Now maybe on that limit... I don't read any of that in this paragraph. Well, this is how we read the paragraph because there's three sentences in the paragraph. The paragraph doesn't say any of that. Well, it's true that the paragraph doesn't say that explicitly. But I think you have to read between the lines. Anyway, the principle that this court's jurisdiction is always... I would be reading between the lines so that we could do your policy arguments. Well, no, I don't think it's a policy. We have textual arguments. But I don't think... This is also actually a relatively significant question that intersects with Congress's authority to exercise its exceptions clause. And I think there the question is, you know, why do you need a clear statement? This has not been followed by this court. This is kind of an isolated thing. And if you look at the authority for it, it just doesn't bear fruit, particularly when you look at how the court has construed its mandatory jurisdiction. Mr. Yang, there's been a lot of talk about a clear statement rule, which seemed to suggest that some sort of verbal formulation is required. But what Castro says is that there has to be a clear indication of Congress's intent. So what Castro says is that we look to the intent and some clear indication of intent. Can't that indication of intent come from something other than specific words? Can it come from the structure? Certainly. I mean, that's normal statutory construction. You determine the meaning of Congress through interpretation of the words and the context and surrounding provision. And, again, all of these are coming together, in our view, to point in our direction. And do you think those structural arguments are policy arguments? No, not at all. These are textual arguments. And, you know, no one has come up with an answer. to why Congress used particular text, second or successive application. In E, ABCD, and E, all use that broad language that naturally captures 2255 and 2254. Why did it do that? And then in B1 and B2, uses the very specific targeted language. Habeas corpus petition under section 2254. That is, I think, almost fatal to any argument that either the amicus or petitioner has that would sweep out, you know, either jurisdiction or sweep in B1. Now, I would say the amicus, if you take the amicus' reading, the amicus' reading would sweep in E anyway. We'd win on jurisdiction under the amicus' reading. But the text, there's just not been a textual explanation for Congress' deliberate use of this distinct language. That language, though, maps directly. The language is both the authorization language in B3, A through E, as well as 4. The authorization language and the broader use of second or successive application, all of that directly maps onto a 2255, which is asking about the certification process in 2244. So when you add all of that together, we think there's a pretty strong and compelling textual reason to conclude that there's no jurisdiction here. And the idea that this is a dismissal, not a denial, I think is counter-textual. And not only that, I think we really haven't gone into what Castro says, but Castro's holding is ultimately that the subject is not the denial of authorization, which would be the denial of authorization to file a second or successive. It is the lower court's refusal to recognize that the 2255 motion is his first, not his second. That, again, maps directly onto the question of whether it's a second or successive under the jurisdictional provision that bars review of denials of second or successive. All that Castro, just like Villamonte-Marquez or Stewart, if you call it that, all those two cases were deciding was that these cases aren't in the box of second or successive. The whole grant or denial thing is not relevant here. Therefore, there's no jurisdictional bar. If you were to start construing the cert bar to include, well, we're going to look to the reason, maybe this applies, maybe that doesn't apply, you're creating a huge hole when Congress used broad language to say it's going to be any grant or denial of authorization. Does it matter, Mr. Yang, that in Castro there was a dismissal of the motion for failure to comply with the second or successive? It does, because what happened is... Just like there's a dismissal here for failure... It's different. ...or for lack of jurisdiction. It's different. The procedural posture is very different. If I may finish. Yes. The procedural posture in Castro was that the prisoner filed a 2255 application, actual application, the habeas court, if you want to call it habeas, 2255 in district court. The district court dismissed it because it concluded it was second or successive without certification from the court of appeals. That went up on direct appeal to the court of appeals on a COA. The court of appeals said, yeah, we agree. This was second or successive. Therefore, it was not properly filed in district court to begin with. Then it comes to this court on cert. There's no limit. This is kind of like an Avery issue. It came up on the merits because it had been resolved by the court of appeals. The court of appeals said, yeah, this court said, no, no, no. This is not the greater denial of the second or successive. It's just a normal case. Thank you, counsel. Mr. Yang, would your arguments be different in why, if Congress decided this is still getting too messy, whatever, and the decision of the district court judge will be final? I'm sorry. The decision of the district court judge in these matters will be final and not subject to further review? Same language with respect to the court of appeals decision except applying it to the district court. I think it would probably be the same. I mean, if the department's position is that you could cut off review after a district court decision? Well, so I'm a little confused. Is the district court decision like a screening decision? Is that what you're talking about? No, in the final regular application of whatever, you know, the habeas application? There might be distinctions between a final disposition. I think with respect to the exceptions clause, I think we'd have to revisit the question about what was expected at the founding when Congress enacted Article III. Not the exceptions clause, just whatever kind of provision that no further review. Congress is cutting off review at the court of appeals stage, and I just wonder why don't your arguments support the idea of cutting review off at the district court stage? If Congress enacted a statute that said the district court's determination in some set of cases shall be final and not subject to review of any form, that would be a little harder. I mean, you might not therefore get certification. There wouldn't be other avenues. I think it would be a little more difficult for purposes of the question about an exception to this court's appellate jurisdiction. But again, if this was limited to the habeas context, again, it's not clear to me that as an original matter when you go back to the founding, Article III would have thought that that's an issue since there was no appellate jurisdiction at all over habeas determinations. Thank you. Justice Thomas? Justice Alito? On the issue of constitutional avoidance, haven't we said that there has to be a real constitutional, a real potential constitutional problem that hasn't been considered, and that the canon, the constitutional avoidance canon doesn't mean, well, if somebody suggests that there might be a constitutional problem, then the canon comes into play. Haven't we limited that canon in that way? And has this exceptions clause issue been briefed adequately in this case for us to base a decision on avoiding a potential exceptions clause issue? Well, there's two questions there. I think you're right that you need a very significant constitutional question in order to avoid it. And then, two, whether the briefing is sufficient, I mean, I would leave that to the court. We addressed the exceptions clause in two ways, both as an original matter discussing the habeas jurisdiction, as well as the fact that there are other avenues for this court to review outside of CERT from a denial or grant of leave to file a second or successive. Whether that's sufficient, I would leave that to the court. Is the limitation that you think is placed on our jurisdiction here at all comparable to a rule that would prevent us from reviewing the merits of cases decided by a district court or a court of appeals? No, this is much more narrow. Remember, the posture that this comes up in is there's already been direct review through the federal system. There's already been one full round of collateral review through the federal system, including a CERT petition to this court. Now we're talking about seconds or successes. The aperture of the case has really narrowed down, and Congress had very significant finality concerns in this context, both with respect to federal prisoners as well as state prisoners, and therefore appropriately provided for certification that's just done by a panel of the court of appeals in 30 days and not subject to CERT with the 90- to 150-day deadline to file after. The process ends in the court of appeals. And this is a screening process that's supposed to weed out the panel of the court of appeals. It's supposed to weed out the frivolous applications, essentially, and only let those that might conceivably have some merit go forward. That's correct. And I would note that the options for either a review in the court of appeals, which would be a sua sponte rehearing or en banc, or certification by a court of appeals to this court are things that are done when judges decide that this is sufficiently important, not when a prisoner decides to petition. Justice O'Leary? Counselor, we haven't gotten back to the main question that Amicus has addressed. You agree with Petitioner that 2244B1 applies only to state prisoners, the same claim litigation bar, correct? That is correct, although we may have slightly different reasons for concluding it. I think some of it overlaps, but they don't lie on all of our... But you disagree with Amicus's position. That's correct. Why don't you just summarize why you disagree with Amicus? Well, I think there's the... I'll give you a preface, and then I'll jump to, I think, a more dispositive point. First, when you look at the language that's used in B3 and B4, the language is distinctive from B1 and B2. It uses second or successive application, and it uses authorization language. Both of those map directly onto what H is doing. That is bringing a federal prisoner... Just go back to it. And then the second point is even if you... Most of Amicus's argument turns on the fact that B3C says, you look to the prima facie requirement with respect to the requirements of this subsection. Subsection B includes B1 and B2. Even if you accept that you look to the subsection, when you look at B1, by its own terms, it ultimately applies to a habeas corpus petition under Section 224054. So the bottom line is you agree substantively that the Court of Appeals, the District Court and the Court of Appeals, or the Court of Appeals, did not subject this to the proper review. It should have reviewed it under... Yes, and this was in the Department's position before any Court of Appeals took that. All right. Yes, you've been saying that from the beginning. But you're claiming that this is unlike Castro and that we don't have jurisdiction even under the narrow reading, which is the Castro reading by your adversary.  Does that make any sense? Yes. There has been no review of the merits of this case at all by the Court of Appeals. Justice Sotomayor, the jurisdictional inquiry does not look to whether there's an error and then decide whether there's a jurisdiction... Well, they used it that way. They refused to apply 2255H by dismissing the case. They didn't deny the application as not newly discovered evidence or not a new rule of constitutional law. They dismissed the case instead of denying it because they said they lacked jurisdiction. That seemed to support my point. Their point was not that it doesn't... We're not going to address whether he's right or wrong, particularly if the prisoner's right or wrong. We just lack jurisdiction. The same thing is true here. Well, if they didn't lack jurisdiction, they got the ground wrong. That's what basically Castro was saying. I've not seen any decision by this Court that... By the way, there's no question that if he goes back down and they look at it substantively, they'll probably boot him out anyway. But it wouldn't take care of the circuit split. It wouldn't. But as we've discussed, there are other ways to take care of that. Just because this vehicle comes to you doesn't mean you need to pull the trigger immediately, particularly when there's a jurisdictional bar that would, if you rule against us on the broad ground, at least, would triple the number of filings by prisoners. No, it wouldn't because all that would have to happen is that circuit courts would just say, we're granting or denying under H, and that's clearly barred. That's what they should be doing anyway, but they're not doing. Some of them are using the state habeas substantive provisions instead of the federal habeas substantive provisions. Well, we agree that there's an error there, but I don't think that error... There wouldn't be an increase in filings. Simply, Castro hasn't increased our filings. They would just do what they're supposed to do, say under H, deny. Well, that's because Castro is only the question of whether it's second or successive, and in this case, there's no question it's a second application. But it would only be with respect to B-1, a ruling by us. Justice Kagan? Justice Gorsuch? Just real briefly, Mr. Yang, on the merits. You ask us to read all of B, 3, A, B, C, D, and E on jurisdiction as a piece, but on the merits, you ask us to split up B. So you say don't split up 3 on jurisdiction, but split up on the merits B. And you say B-3 and 4 apply, but B-1 and 2 don't. And one of the arguments, main argument, as I understand it from you, is because the first two mentions Section 2254. But the same question I had to Mr. Adler, why doesn't that cut against your view on the merits, given that this provision, B, is all about all habeas, pre- and post-conviction, federal and state. Do you agree that that's the case? I'm sorry, do you mean all of B or just B-3 and B-4? Well, B, 3 and 4 are all about all applications. Everybody, everybody, everybody is in, pre and post. And what the inclusion of 2254 tells us is that that's addressed to post-conviction applications. Why isn't that a natural understanding? It's actually more applicable in the 2255 context. We have to read motions as applications anyway under your reading. Why aren't these the most relevant applications for federal prisoners? 2255 is post-conviction too. I understand that. That's my point. I guess I'm confused because Congress chose distinct language. Yes, I understand that, and I'm asking why. That's all right, I'll ask Amicus. Thank you, Justice Gorsuch. Justice Barrett. Justice Jackson. Thank you, Counsel. Thank you, Your Honor. Ms. Mitchell. Mr. Chief Justice, and may it please the Court, on the one-year anniversary of Timothy McVeigh's bombing of a federal building, Congress passed AEDPA to advance the finality of criminal convictions. Congress largely did away with post-conviction applications by federal prisoners, requiring them to file motions under Section 2255. And Congress amended Section 2244 to provide finality requirements for state prisoners who largely seek post-conviction relief via an application under Section 2254. Everyone agrees that Section 2244 is principally about state prisoners and that there's a cross-reference that makes it applicable to federal prisoners. That structure means that there is going to be language in 2244 that is specific to state prisoners. And you have to read that in light of a cross-reference that makes language about state prisoners apply to federal prisoners. Everyone agrees that the cross-reference incorporates 2244B3C, which says to apply the requirements of this subsection, Subsection B. And the very first requirement of Subsection B is the do-over bar. That interpretation follows from simple statutory cross-references. It also makes perfect sense in light of Congress's clear goals. There is no reason to think that in the landmark legislation passed in the wake of the Oklahoma City bombing, in which Congress is trying to focus on finality, it entirely eliminated any do-over bar on post-conviction motions by federal prisoners like McVeigh. I welcome the Court's questions. Ms. Mitchell, both the government and petitioners put more weight on the difference in language in 2255 and 2444, the language application versus motion, that there's more emphasis on habeas for state prisoners. How do you reconcile that, the difference in language? Justice Thomas, the way you reconcile this is because you're viewing this statute via the lens of a cross-reference. I think this is really important to understand what both the government and petitioner are arguing. They're saying that when you see the word application, on its face it includes federal motion. That carries significant consequences for AEDPA. In the statute of limitations provision, for example, 2244D1B, Congress distinguished in the state context filing an application. In the statute of limitation provision governing federal prisoners, 2255F2, it used different language. It set an impediment to making a motion. That application and motion distinction was critical to AEDPA. Both the petitioner and the government say, well, we're just going to read application to mean motion, and I don't think you can do that. Application means application. You apply it to motions via cross-reference. And that's why the Justice Gorsuch's question, the under 2254 language makes it a closer fit to 2255 motions than the general provisions in subsection B3. B3 speaks only of applications, which on its face excludes 2255 motions. In addition to rewriting motion to mean application, both the government and the petitioner want to rewrite the language this subsection. And, again, that has sweeping consequences, not just for AEDPA, but for the U.S. Code. One of the principal decisions that my brief relies on is the cyan decision, where this court said clearly that when Congress says subsection, it means subsection. So why wouldn't we take that to be right in the category of the very first thing that you said, which is we all agree that this 2244 primarily applies to state prisoners and that there will be language as a result that might not be a perfect fit because it's directed to state prisoners. And I would think this subsection is that kind of thing. I don't think so, Your Honor, because this subsection is direct command of the cross-reference, and it says to apply all of B, and that's part of the very provision that everyone agrees is incorporated. I understand, but your view of this makes us think that Congress was trying to get to B1 in the federal context through two cross-references. That seems like such an odd way. I mean, if Congress wanted the B1 bar to apply in federal habeas scenarios, they easily could have just written that, or in H, they could have directly referenced B1. But you get us there through the cross-reference in H and then the cross-reference in B3, and that just seems so strange. I think that's the easiest way to do it in light of all of the parties' agreement that B3C applies. But there's another path, which is just to say on its face it's a requirement that applies via the cross-reference because the cross-reference says as provided in 2244, and you're going to bring in subsection B1, which isn't displaced by H1 and 2, which applies. And we think that the better place is to start where all the parties agree, but I'm not going to resist a reading that would bring it in on the as provided in 2244 cross-reference alone. Thank you. In addition, just to comment on the problems with reading subsection to mean something else, not only did this court confront that in the CYAN decision, which neither the government nor the petitioner even cite in their reply brief, but it's been an issue in numerous other cases that this court has confronted, including with respect to the Federal Vacancies Act in NLRB versus Southwest General and throughout. We also know that in AEDPA, Congress knew how to specify and pick and choose provisions when it wanted. So for example, in 2264B, Congress said, following review subject to subsections A, D, and E of section 2254, the court shall rule on the claims properly before it. So there are other examples in AEDPA where it decided to pick and choose among subsections and it was specific. Here, Congress enacted in a wholesale cross-reference with respect to, at a minimum, the certification provisions that all agree include B, 3, C. What do you make of the fact that Congress, to your alternative point to Justice Jackson, that Congress didn't just end it, 2255H, after as provided in section 2244? They could have just ended it there and then the cross-reference would have been complete, I think. And what are we to make of that other language, if anything? They could have done that. There are two reasons why I think they didn't. The first is because they were bringing over the certification procedures. And the second is they wanted to provide constraints on the abuse of the writ, which is what H1 and 2 principally address. So in the pre-AEDPA context, there were two problems that the court faced with habeas corpus applications. One was the successive problem. So you have someone who's bringing a claim that they brought again. A separate and distinct problem was abuse of the writ, which is where you held on to a claim, you brought one, waited, you brought your other one and another one in a second application, you bring a third one. That was a distinct problem, abuse of the writ. And in 1948, when Congress amended AEDPA, they added in 2255 a successive bar. So what Congress said was the sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner. This was in the 1948 Act. This court interpreted that language in Sanders to say, Section 2244, and this language is addressed only to the problem of successive applications. And what the court did is say, well, we're not going to read that to read out the abuse of the writ doctrine. So this is addressing successive applications and we're also going to apply abuse of the writ doctrine. The provisions in 1 and 2, which are now after the 2008 technical amendments, H1 and 2, only address abuse of the writ. So there's no reason to think that when Congress omitted that language and instead put a cross-reference to 2244, that it meant not to include the number one finality promoting provision, which is B1. Additionally, there's some argument that the government and the petitioner make that this is really not a problem, kind of what are we doing here? But Judge Rosenbaum in the 11th Circuit observed that in the three months after this court's decision in Welch, the 11th Circuit saw 1,800 applications for Johnson-based review. So I do think it is a real problem that courts are grappling with. And the tools that Congress gave the courts of appeals to deal with this problem allowed it to make the expeditious determination under the 30-day clock. And what petitioner and the government would say is, well, we're going to take one of those key tools out of their tool belt. We're not going to allow them to look and see, was this argument already presented? And if so, can we dismiss it on that basis alone? And that makes it more difficult to accomplish its task in 30 days. I think one thing that's significant about that also is Congress provided the same 30-day clock for state prisoners and federal prisoners. It didn't say we're going to give 30 days for state prisoners and 45 for federal or some other indications they intended to treat them differently. And Justice Thomas, to your question to the petitioner, all indications by use of legislating by cross-reference is that Congress wanted to treat at least for successive applications state prisoners and federal prisoners alike. That's why they chose this kind of clunky mechanism to do so via cross-reference. One additional point, petitioner, in response to one of the questions about jurisdiction, said that there's a clear statement rule as it relates to state prisoners with the jurisdictional point because of the word application and 3E. That's significant because that is saying that is a clear statement that this applies to state prisoners, which is exactly our point. Every time Congress said application, it was excluding on its face federal motions. So in order to read any of these provisions as applying to federal motions under 2255, you have to view them in light of the cross-reference. And that's exactly what you do when you look at 3C's cross-reference to B1. You read that language, a successive habeas corpus application under 2254 in light of that cross-reference to apply to similarly situated federal prisoners. And again, Justice Gorsuch, to your question, it's not like it says applications by Guantanamo detainees. I think my argument would be harder if the additional language was something that didn't map on so tightly to the 2255 mechanism. But instead, that's a closer fit than the application language that the government and petitioner rely on to bring in the certification provisions in the first place. Which can include pre-conviction detainees. Yes, Your Honor. And so it's just a natural fit to see what Congress was doing there. But again, in the wake of Oklahoma City, there's no reason to think that the number one finality provision in 2244, which was titled Finality of Determinations, that they intended that not to apply to federal prisoners like McVeigh, which was the exact target of the one-year anniversary when President Clinton signed this bill into law. It was a repeal of a power federal courts had previously to prevent do-over petitions by federal habeas petitioners. Exactly. And instead, they rooted them through the provisions for 22, the provisions that otherwise applied to state prisoners. And one important point, the standalone language that prevented successive applications by federal prisoners had long been marginalized by this court. In Sanders, the court said, this can't be taken seriously. And so it's perfectly natural for Congress to say, you didn't do what we said in 2255. And so this time around, we're going to put you in the same bucket as state prisoners where you will enforce the successive bar. And the combination of B-1 together with subsection 1 and 2 in 2255 addressed both the successive and the abuse of the writ problems that Congress was targeting in EDBA. Thank you, Justice Thomas. Any further? Justice Alito? Justice Sotomayor? Counsel, collateral estoppel would apply to successive positions in federal court. So you get to the same place, just a different issue. And that's quick. That's not true, Your Honor. There are decisions by this court saying that res judicata does not apply in the habeas context. And instead, what 2244 and 2255 did was, and this is in the legislative history, was to codify a modified res judicata principle. So res judicata traditionally has not applied in habeas. Justice Gorsuch? Justice Kavanaugh? Justice Barrett? Justice Jackson? Thank you, Counsel. Mr. Adler, rebuttal. Thank you, Mr. Chief Justice. We acknowledge that this is a technical case, but I'd like to try to simplify how the court should resolve it if it agrees with us on B-1, which we do believe is resolved on the face of the provision. This is the rare case where the plain text of the statute resolves the question. So if you agree with us on B-1, then on the jurisdictional question, there's two options, I think. One is the government's late-breaking suggestion on page 12 of its reply brief that to dismiss this case for lack of jurisdiction and indirectly resolve the B-1 question. This goes to Justice Barrett's suggestion earlier. Our concerns with that remain that there is a significant risk that doing that would not resolve the circuit conflict unless the court is crystal clear that it is purporting to resolve the B-1 question in a holding. We also have significant concerns about whether Mr. Bowe, of all people, could benefit from that. We appreciate the government's suggestion that he could refile. However, we are not sure about that in light of some language in the Bradford decision, 11th Circuit, that says the B-1 dismissals are with prejudice. And if anybody should benefit from a statement by this court on B-1, it's Mr. Bowe, who has been waging a three-year campaign designed to eliminate this atextual obstacle that has been placed in front of him. So that's one option. We think it is highly unorthodox and can be avoided simply by accepting one of our narrower jurisdictional arguments, and we have given the court three of them. We think the clear statement rule applies to all of them. I don't understand how the government can say there's no clear statement rule when Castro says it on this particular statutory provision. We don't have to do two steps. It's right there on the face of the opinion. And by the way, the case it cites for that is not Utah v. Walker. It is Felker v. Turpin, which is a habeas case. It says no implied repeals of habeas jurisdiction. The court applies it here to B-3E. Justice Jackson, I think you have identified the simplest way to find jurisdiction over this case, and it is the fact that the court of appeals dismissed this without ruling on the merits. It did not grant or deny. The text of B-3 is very clear that we have grants or denials and we have dismissals. The court here dismissed this case improperly. That's not the error that we're complaining about. That would be harmless because the effect would be a denial. But it is the reason why there's jurisdiction. There's no denial here. That follows directly from this court's B-3 precedent in Stewart, which also involved a dismissal, no merits ruling, and the court said the effect, even though it was to grant it, didn't matter. It wasn't a grant. And the final thing about that, if the court simply clarifies that, in this opinion, that courts of appeals should not be dismissing claims in this posture but should instead be granting or denying them, then the court will not see a single cert petition under that theory come to this court because the courts of appeals will simply grant or deny moving forward. And so if the court is concerned about receiving additional cert petitions under the statute, that's the easy way to go. And so at the end of the day, we think the text of B-1 is plain. This court has jurisdiction to effectuate that text and resolve circuit conflict directly once and for all. Thank you. Thank you, counsel. Ms. Mitchell, the court appointed you to brief and argue this case as an amicus curiae. In support of the judgment below as to question one, you have ably discharged your responsibility for which we are grateful. Thank you. The case is submitted.